# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| CHARMAINE MCGUFFEY | : | Case No.: 1:18-cv-322 |
| 536 Lang Road | : | |
| Cincinnati, OH 45244 | : | Judge Susan J. Dlott |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | **PLAINTIFF'S FIRST AMENDED** |
| | : | **COMPLAINT WITH JURY DEMAND** |
| HAMILTON COUNTY SHERIFF'S | : | **ENDORSED HEREON** |
| OFFICE | : | |
| 1000 Sycamore Street, #100 | : | |
| Cincinnati, OH 45202 | : | |
| | : | |
| And | : | |
| | : | |
| JIM NEIL, Hamilton County Sheriff, | : | |
| in his official capacity | : | |
| 1000 Sycamore Street, Room 110 | : | |
| Cincinnati, Ohio 45202 | : | |
| | : | |
| And | : | |
| | : | |
| HAMILTON COUNTY, OHIO | : | |
| c/o Joseph T. Deters, Prosecuting Attorney | : | |
| 230 East Ninth Street, Suite 4000 | : | |
| Cincinnati, Ohio 45202 | : | |
| | : | |
| And | : | |
| | : | |
| HAMILTON COUNTY BOARD OF | : | |
| COMMISSIONERS | : | |
| 138 East Court Street, Room 603 | : | |
| Cincinnati, Ohio 45202 | : | |
| | : | |
| Defendants. | : | |

Plaintiff amends her Complaint as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B).

Plaintiff Charmaine McGuffey complaining of Defendants Hamilton County Sheriff's

Office et al. alleges as follows:

## PARTIES

1.     Plaintiff Charmaine McGuffey was a citizen and resident of the State of Ohio at the time these events occurred.

2.     Defendant Hamilton County Sheriff's Department ("HCSD") is organized and operates under the laws of the State of Ohio.  Defendant HCSD is an employer within the meaning of federal and state law.

3.     Defendant Jim Neil, is and was at all times herein relevant the Sheriff of Hamilton County, Ohio and, as such, was responsible for the training, supervision, and conduct of his deputies and employees in the Hamilton County Sheriff's Department.  He is sued in his official capacity only.

4.     Defendant Hamilton County, Ohio is a political subdivision in the State of Ohio.

5.     Defendants Board of Commissioners is the body of elected officials charged with the administration of Hamilton County government.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331 because it arises under the laws of the United States.

7.     Plaintiff's Counts I, III, and V arise under Title VII of the Civil Rights Act of 1964 as amended.

8.     Plaintiff's Count VII arises under Ohio common law, the Ohio Constitution and the U.S. Constitution.

9.     Plaintiff's Count VIII is brought pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause of the 14th Amendment to the U.S. Constitution.

10.     This court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367 on the grounds that they are so related to the federal claims, over which this Court has original jurisdiction, that they form part of the same case or controversy.

11.     Venue is proper in the Southern District of Ohio, Western Division, pursuant to 28 U.S.C. §1391(b) because a substantial part of the events given rise to these claims occurred in the Southern District of Ohio, Western Division.

12.     Plaintiff filed a timely Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on August 7, 2017.

13.     The EEOC did not rule that her charge was untimely.

14.     Plaintiff has met all procedural prerequisites for her Title VII claims.

## FACTUAL ALLEGATIONS

15.     Plaintiff is a 60-year-old, openly lesbian female.

16.     Plaintiff began her employment with Defendant HCSD in 1983.

17.     Plaintiff regularly earned promotions.  In 1985, she was promoted to Sergeant.  In 1988, she was promoted to Lieutenant.  In 1993, she was promoted to Captain.  In 2013, she was promoted to her most recently held position of Major of Court and Jail Services.  In the 33 years of her employment with the Sheriff's Department all of the Plaintiff's personnel reviews were always above average.

18.     Plaintiff was the first and only female to hold the rank of Major in the history of the department.

19.     When Plaintiff took on the role, the Hamilton County Jail was deemed the worst jail in the state of Ohio by the Ohio Department of Rehabilitation and Corrections.  The jail failed 68 of 82 jail minimum standards in the 2013 inspection.  After just three years of

Plaintiff's management, the Hamilton County Jail met 98% of essential minimum state-required standards and 100% of non-essential state-required standards and was deemed the best of large jails in the state of Ohio in July 2016 by the Ohio Department of Rehabilitation and Corrections.

20.     Between 2013 and 2017, Plaintiff was named local and regional "Law Enforcement Officer of the Year."  The Plaintiff was honored by the Ohio House of Representatives for being named the 2016 Public Citizen of the Year by the Ohio Chapter of NASW.  In 2013, she was included in the Cincinnati Enquirer's list of "Professional Women to Watch," and in 2014, she was nominated for the Cincinnati Enquirer's "Woman of the Year." She has received a significant number of other awards and letters of commendation, including a Letter of Commendation concerning the 2017 Ray Tensing Trial.   In 2017, due to the success of the Plaintiff's jail programs, the Ohio Governor's office sent representatives to the jail to preview her programs, specifically the Women's Recovery Pod.

21.     Plaintiff was at all relevant times qualified for each of the positions that she held.

22.     The Jail and Corrections line of work is primarily male-dominated. Currently, there are no female Majors or Captains and only one Lieutenant in the jail or court services.  In addition, there are no women who hold rank on the uniformed command staff.

23.     Plaintiff was the first female and first openly lesbian individual to hold the position of Major of Court and Jail Services.

24.     Homosexuality is an immutable characteristic.

25.     There is no Human Resources Department that represents HCSD.

26.     As the Major of Jail Services, Plaintiff reported to two males: Sheriff Jim Neil and Chief Deputy Mark Schoonover.

27.     Plaintiff experienced disparate treatment between her and the other two male Majors. The Sheriff originally appointed 3 Majors to replaced 5 Majors from the previous administration.  In 2013, the two incoming male Majors replaced one Major each and the Plaintiff was given the job formerly held by three Majors.  In addition, male Majors received support which the Plaintiff did not.  For example, the males were able to choose their subordinate Captains and had access to multiple secretaries/administrative assistants.

28.     While Plaintiff worked as the Major of Court and Jail Services, she frequently brought issues to both the Chief and the Sheriff regarding her male subordinate supervisors.  She specifically complained that her subordinate male supervisors were often disrespectful towards Plaintiff.

29.     In response to Plaintiff's complaints, Sheriff Neil told Plaintiff that those supervisors, and some other men in the department, just "don't like working for a woman." Sheriff and the Chief Deputy did not discipline the male subordinates for their disrespectful and insubordinate behavior.

30.     Chief Deputy Schoonover consistently treated Plaintiff differently than her heterosexual male peers.  For example, Plaintiff was excluded from command staff meetings.

31.     Defendant HCSD advised Plaintiff not to allow the Cincinnati Enquirer to publish a piece featuring Plaintiff's wedding to her female partner because it could be "used against her." This comment invokes a conscious stereotype of homosexual deviance and evinces a discriminatory attitude based on sex role stereotyping.

32.     Chief Deputy Schoonover instructed one of his heterosexual male subordinates, Lt. William Rarrick, head of Internal Affairs, to "keep an eye" on Plaintiff in 2013.  He did not indicate that his subordinates should keep an eye on any male employees.

5

33. The Sheriff and Chief Deputy Schoonover repeatedly declined Plaintiff's requests that he provide her with performance reviews and constructive feedback. When pressed, the Sheriff told the Plaintiff that she "should receive a grade of A".

34. Chief Deputy Schoonover often treated Plaintiff in a demeaning and derogatory manner during staff meetings, berating her in front of her male colleagues for issues that were not within her line of responsibility, such as insufficient jail staffing levels or personnel recruitment issues.

35. Plaintiff complained to Sheriff Neil that the Chief Deputy was treating her less favorably than the male deputies reporting to him by engaging in conduct that undermined her supervisory role. Instead of following policy and procedure, the Chief Deputy disciplined subordinates without her knowledge, made changes under her chain of command without her knowledge, and the Plaintiff had to learn of these changes, under her command, from subordinates. In addition, the Chief Deputy refused to communicate essential information, including Internal Investigations into claims of excessive use of force. Nevertheless, the Sheriff did not counsel, reprimand, or discipline Chief Deputy Schoonover, or take any other steps to address her complaints of discriminatory and biased treatment.

36. Plaintiff felt as though she was under constant scrutiny from Chief Deputy Schoonover because she was a homosexual woman. Plaintiff believed she had to work harder than her heterosexual male peers to meet expectations.

37. HCSD has a practice of dealing with the performance deficiencies of male employees by reassigning them to a different department while retaining their pay and rank.

38. Plaintiff, who has been certified by the Hamilton County Prosecutor's office as a use of force expert for jail cases, criticized the handling of use of force in the jail. She disagreed

6

with the way Internal Affairs handled investigations regarding Excessive Use of Force. The Plaintiff expressed her concern with use of force issues, and raised complaints with Internal Affairs concerning use of force practices among deputies and the lack of discipline for violent behavior by deputies. In retaliation, Internal Affairs stopped further communication with Plaintiff regarding these matters, even though ultimately the Plaintiff, as Major, was accountable for conditions in the jail.

39.     Plaintiff repeatedly raised concerns regarding the multiple serious use of force incidents to the Sheriff and Chief Schoonover, which included inmates suffering severe injuries from improper and excessive use of force; repeated violations of use of force policy without proper investigation by Internal Affairs; Internal Affairs investigations designed to protect deputies from disciplinary action for use of force violations; improper reporting of incidents involving inmate injures as accidental when the incident actually involved use of force violations; and failure to discipline or discharge deputies who committed gross violations of the use of force policy.

40.     At the Plaintiff's insistence she met with the Sheriff, the Chief Deputy, and Internal Affairs in 2016 to discuss the issues of use of force. During the meeting the Plaintiff outlined her concerns regarding the above issues. No substantive changes were made to the process by which Internal Affairs handled these complaints.

41.     Directly after that meeting the Plaintiff received a threatening memo from Internal Affairs. The memo contained unsubstantiated accusations against the Plaintiff. When Plaintiff initiated follow up with Internal Affairs, the response was, "I don't have to talk to you".

42.     A Lieutenant passed the Plaintiff in the hall and, while she was having a conversation with another employee, quietly said to Plaintiff that "somebody's in trouble."

7

43.     Plaintiff held each of her subordinates to high standards.  As such, Plaintiff does not fit heterosexual female stereotypes of passivity and femininity.  Instead, Plaintiff exhibits demeanor, mannerisms, and appearances associated with masculinity.

44.     On January 19, 2017, an internal complaint was filed against Plaintiff alleging a hostile work environment.  An internal investigation followed.

45.     Over the next two months, Internal Affairs at HCSD selected and interviewed employees of HCSD.  Almost all of the employees interviewed were from the old administration and were new to Plaintiff's management style.

46.     Almost two thirds of the employees interviewed were male subordinates of Plaintiff, including some male subordinates who "don't like working for a woman."

47.     Internal Affairs specifically asked female employees to disclose the nature of their relationship with the Plaintiff.  No males were asked to disclose the nature of their relationship with the Plaintiff.

48.     A Sergeant, Plaintiff's heterosexual male subordinate, was interviewed. He has been disciplined by Plaintiff, and claimed he felt "whooped verbally."  He claimed "she [Plaintiff] is very pro-lesbian."  He stated that Plaintiff allowed particular behaviors to go on at the jail because it was a "lesbian act."

49.     A Captain stated that Plaintiff is "loud" and that a person that does not work with her everyday would think that she was yelling.

50.     A Deputy stated that he "had no respect for her as a Major nor did he respect her as a woman."

51.     The investigation was wholly biased against Plaintiff.  The investigator assigned to investigate the hostile work environment claim against Plaintiff was biased against Plaintiff.

52.     In the report, the investigator neutrally summarized the subordinates' interviews. He did not editorialize or opine about the interviewees' motivation or truthfulness.

53.     However, the investigator injected his biased assumptions regarding Plaintiff's motivation and truthfulness into his summary of his interview with her.  He did not neutrally summarize interviews of Plaintiff and two Corporals.  Instead, he directly quoted portions of the interview in order to highlight Plaintiff's articulated pauses.  In these three interview summaries, the investigator further infected the investigation with bias by including his own interpretation of what he believed the interviewee meant by what he or she said.  Internal Affairs accepted all allegations against Plaintiff as true, but summarily dismissed Plaintiff's rebuttal statements as false, even when contrary to evidence.

54.     In addition, the witnesses who were expected to make statements favorable to the Plaintiff, were read a Garrity warning in an effort to discourage favorable statements and to conceal their responses from public disclosure following the investigation.

55.     The Sheriff advised Plaintiff that he did not read the 108 page Internal Investigation Report but relied on the Deputy Chief's recommendation in making the decision to terminate Plaintiff.

56.     Plaintiff was terminated from her position as Major of Jail Services on or about June 1, 2017.

57.     Upon information and belief, Plaintiff was replaced by a heterosexual male.

58.     Upon information and belief, after some time following Plaintiff's replacement with a male officer, the responsibilities of the position Plaintiff held were further divided among five different officers, all of whom are male.

59.     Defendants' articulated reasons for terminating Plaintiff were that she created a hostile work environment and was dishonest.  These reasons were a false pretext for discriminating and terminating Plaintiff because of her gender, her failure to conform to traditional female stereotypes, her sexual orientation, and her open criticism of HCSD's excessive use of force against inmates.

## COUNT I

### (Sex Discrimination – Title VII)

60.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

61.     Plaintiff, a female, was fully qualified for her position at all relevant times.

62.     Defendants terminated Plaintiff's employment because of her gender.

63.     Defendants terminated Plaintiff's employment because Plaintiff's behavior did not conform to traditional female gender stereotypes, in violation of Title VII.

64.     Male heterosexual deputies who exhibited the same behaviors, traits, and characteristics as Plaintiff were neither subject to the same criticism and discipline as Plaintiff nor were they terminated from employment.

65.     Defendants treated Plaintiff less favorably than similarly situated male deputies as described above, by subjecting her to heightened scrutiny and investigation and terminating her employment because of her gender.

66.     Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard for Plaintiff's rights.

67.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury and damage for which she is entitled to judgment.

## COUNT II

### (Sex Discrimination – O.R.C. § 4112)

68.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

69.     Plaintiff, a female, was fully qualified for her position at all relevant times.

70.     Defendants terminated Plaintiff's employment because of her gender.

71.     Defendants terminated Plaintiff's employment because Plaintiff's behavior did not conform to traditional female gender stereotypes, in violation of Ohio law.

72.     Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard for Plaintiff's rights.

73.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury and damage for which she is entitled to judgment.

74.     Male heterosexual deputies who exhibited the same behaviors, traits, and characteristics as Plaintiff were neither subject to the same criticism and discipline as Plaintiff nor were they terminated from employment.

75.     Defendants treated Plaintiff less favorably than similarly situated male deputies as described above, by subjecting her to heightened scrutiny and investigation and terminating her employment because of her gender.

## COUNT III

### (Sex Discrimination – Title VII)

76.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

77.     Plaintiff, an openly lesbian female, was fully qualified for her position at all relevant times.

78.     Defendants terminated Plaintiff's employment because of her sexual orientation, an immutable characteristic, which constitutes discrimination because of Plaintiff's sex, and because of her failure to conform to gender-based stereotypes in violation of Title VII.

79.     Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard for Plaintiff's rights.

80.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury and damage for which she is entitled to judgment.

## COUNT IV

### (Sex Discrimination – O.R.C. § 4112)

81.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

82.     Plaintiff, an openly lesbian female, was fully qualified for her position at all relevant times.

83.     Defendants terminated Plaintiff's employment because of her sexual orientation, an immutable characteristic, which constitutes discrimination because of Plaintiff's sex, and because of her failure to conform to gender-based stereotypes in violation of Title VII.

84.     Defendants' conduct was intentional, willful, wanton, malicious, and in reckless disregard for Plaintiff's rights.

85.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered injury and damage for which she is entitled to judgment.

## COUNT V

### (Retaliation – Title VII)

86.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

87.     Plaintiff made complaints protected by Title VII.

88.     Defendants' acts in retaliating against Plaintiff because of her protected complaints include, but are not limited to, holding her to higher standards, treating her worse than employees who did not make protected complaints, and terminating Plaintiff on account of her protected activity, in violation of Title VII.

89.     Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

90.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages and is entitled to recovery pursuant to Title VII.

## COUNT VI

### (Retaliation – O.R.C. § 4112)

91.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

92.     Plaintiff made complaints protected by Ohio law.

93.     Defendants' acts in retaliating against Plaintiff because of her protected complaints include, but are not limited to, holding her to higher standards, treating her worse than employees who did not make protected complaints, and terminating Plaintiff on account of her protected activity, in violation of Title VII.

94.     Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

95.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages and is entitled to recovery pursuant to Title VII.

## COUNT VII

### (Wrongful Discharge in Violation of Public Policy)

96.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

13

97.     As evidenced in constitutional, statutory, and common law, including but not limited to the Eighth Amendment to the U.S. Constitution, this nation has a clear public policy of protecting inmates against the use of excessive force.

98.     As evidenced in the constitutional, statutory, and common law of the State of Ohio, including but not limited to Article I, Section 9 of the Constitution of the State of Ohio, the Ohio Administrative Code, Sections 5120-9-01, 5120-9-02, 5120-9-03, the Ohio Minimum Jail Standards, and the Hamilton County Sheriff's Office's Use of Force Policy, this State has a clear public policy of protecting inmates against the use of excessive force.  This public policy would be seriously jeopardized by allowing an employer to terminate an employee for reasonably identifying excessive force against inmates and attempting to initiate action to correct such behavior.

99.     Plaintiff complained to her supervisors regarding excessive use of force against inmates in the jail.

100.     Plaintiff was subsequently terminated as a result of her complaints.

101.     Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's rights.

102.     As a result of Defendants' discriminatory conduct, Plaintiff has been damaged and is entitled to compensation.

## COUNT VIII

### (Violation of Equal Protection – 42 U.S.C. §1983)

103.     Plaintiff realleges the foregoing paragraphs as if fully rewritten herein.

104.     Defendants were acting under color of state law.

14

105.     Defendants' conduct described above unlawfully and unconstitutionally deprived Plaintiff of the equal protection of the law, because of her gender, as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and in violation of 42 U.S.C. §1983.

106.     As detailed above, Defendants disregarded Plaintiff's complaints of abuse of force at the jail, subjected Plaintiff to heightened scrutiny and a biased and discriminatory investigation, and terminated her employment because of her gender.

107.     Defendants had a custom or policy of treating female employees of the Sheriff's Office, and specifically Plaintiff, less favorably than similarly situated male deputies with respect to the terms, conditions, and privileges of employment.

108.     Defendants' custom and policy of discriminating against Plaintiff includes discrimination because she did not adhere to traditional female gender stereotypes.

109.     Defendants tolerated and acquiesced in the discriminatory conduct described above.

110.     Defendants' actions violated Plaintiff's right to equal protection.

111.     Defendants' actions were willful, wanton, malicious, and/or in reckless disregard of Plaintiff's constitutional rights.

**112.**     As a result of Defendants' discriminatory conduct, Plaintiff has been damaged and is entitled to compensation.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

(a)     That Plaintiff be reinstated to her employment with Defendants;

(b)     That Plaintiff be awarded all pay and benefits lost from Defendants;

15

(c)     That Plaintiff be awarded compensatory damages from Defendants;

(d)     That Plaintiff be awarded liquidated damages from the Defendants;

(e)     That Plaintiff be awarded punitive damages from Defendants;

(f)     That Plaintiff be awarded pre-judgment interest from Defendants;

(g)     That Plaintiff be awarded reasonable attorneys' fees and costs from
        Defendants;

(h)     That Plaintiff be compensated for the adverse tax consequences of
        receiving a lump sum award rather than her compensation over several,
        separate tax years; and

(i)     That Plaintiff be awarded all other legal and equitable relief to which she
        may be entitled from Defendants.


Respectfully submitted,

*/s/ Kelly Mulloy Myers*
Kelly Mulloy Myers (0065698)
Trial Attorney for Plaintiff
Freking Myers & Reul LLC
600 Vine Street, Ninth Floor
Cincinnati, Ohio 45202
Phone: (513) 721-1975/Fax: (513) 651-2570
*kmyers@fmr.law*


## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Kelly Mulloy Myers*

16

## <u>CERTIFICATE OF SERVICECERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail, e-mail and/or facsimile to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's System.

/s/ Kelly Mulloy Myers